**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Ayla Royan, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. _____ |
| | ) |
| Chicago State University, Zaldwaynaka Scott, | ) |
| and Elmer Gentry. | ) |
| | ) Jury Demanded |
| Defendants. | ) |
| | ) |

## COMPLAINT

### Introduction

1.     Plaintiff Ayla Royan brings this action under Section 504 of Rehabilitation Act, 29 USC §794, and Title II of the Americans with Disability Act, 42 USC §12132 to order defendants to reinstate her into her instructional program in the College of Pharmacy of defendant Chicago State University (CSU). Plaintiff has been unlawfully excluded from that program because of her disability, which in no way interferes with her ability to complete her course work and graduate. Plaintiff also seeks damages from defendant CSU for lost income that she would have earned had she been allowed to graduate. In addition, under Illinois law, plaintiff also seeks injunctive relief against the defendant Zaldwaynaka Scott ("Scott"), who is the CSU president. Scott and the defendant Elmer Gentry ("Gentry") who is the Dean of the College of Pharmacy in their individual official capacities. Plaintiff seeks such injunctive relief to reinstate her as a student and permit her to graduate on the grounds that the actions taken by these officials exceeded their authority under state law and deprived her of rights to equal protection and due process guaranteed by Article I, Section 2 of the Constitution of the State of Illinois.

1

**Parties**

2.      Plaintiff Ayla Royan is a resident of Illinois and formerly a student of Chicago State University in the College of Pharmacy.

3.      Defendant Chicago State University ("CSU") is a state supported institution of higher education whose board of directors is appointed by the Governor of Illinois.

4.      Defendant Zaldwaynaka Scott is the President of Chicago State University.

5.      Defendant Elmer Gentry is the Dean of the College of Pharmacy.

**Jurisdiction**

6.      This action arises under the laws of the United States, including the Americans with Disability Act and Section 504 of the Rehabilitation Act and therefore this Court has jurisdiction under 28 USC 1331 for the federal law claims in Count I.

7.      This Court also has supplemental jurisdiction of the state law claims in Count II.

8.      Venue lies in this judicial district because all parties reside here and the action arose here.

**Facts**

9.      Plaintiff enrolled in the College of Pharmacy of defendant CSU in August 2014.

10.      By March 2019, she had completed over three years of CSU's four-year program for a degree as a Doctor of Pharmacy, a "PharmD."

11.      By that time, plaintiff had incurred over $200,000 in student loan indebtedness.

12.      As a graduate Doctor of Pharmacy, plaintiff would have been likely to earn $130,000 a year, which is approximately the median income in a hospital setting.

13.      Plaintiff would have been likely to begin to earn such annual income, had she been allowed to continue as a student and obtain her doctorate as she anticipated in October 2019

14.     Plaintiff often earned mostly B's and C's in her course work and had never failed a course.

15.     From May 2017 until September 2018, she took a leave of absence from the College to address a medical condition.

16.     The medical condition or disability is a combination of an eating disorder with periodic depression.

17.     At least some persons at CSU were aware of her condition, though it was not widely known.

18.     While a disability within the meaning of the Americans with Disability Act and the Rehabilitation Act, her condition does not interfere with her ability to do her course work or to be employed after graduation as a pharmacist.

19.     After this leave of absence to address this condition, and a brief period of hospitalization, plaintiff returned to school in September of 2018 and continued as a fourth-year student.

20.     In early 2019, she began a six-week rotation with Dr. Shivani Patel, who would be her preceptor for the rotation.

21.     For the first four weeks of the rotation, nothing of note occurred, and plaintiff was performing her course work as usual.

22.     On March 5, 2019, plaintiff came out of a difficult session with her physician and felt unusually anxious.

23.     She telephoned Dr. Patel and asked if she could be excused from attending the rotation that day.

24.     Dr. Patel excused her and raised no objection..

25.     The next day, on March 6, 2019, Dr. Patel went to plaintiff and asked her to explain why she had sought to be excused.

26.     Plaintiff mistakenly believed that Dr. Patel was showing sympathy and confided certain facts about her condition, including the fact that she had been hospitalized during part of her leave.

27.     Dr. Patel was upset to learn of the hospitalization and told plaintiff that, as an intern under her charge, Dr. Patel could not take responsibility for her.

28.     Dr. Patel further stated that plaintiff might try to hurt herself.

29.     Plaintiff had said nothing about hurting herself and was shocked by Dr. Patel's reaction.

30.     Nor had plaintiff asked for any particular accommodation from Dr. Patel or CSU or special treatment as a student.

31.     Dr. Patel now told plaintiff that she was not doing well in the course after all and should not be a pharmacist and should not seek work as a Pharmacy technician.

32.     Dr. Patel had not given any indication to plaintiff that she was not doing well until plaintiff told her about the prior hospitalization.

33.     Dr. Patel asked her to give a presentation that afternoon and, later that night, sent her a text that in fact plaintiff was doing very well and that they should "start fresh tomorrow."

34.     The next day—March 7, 2019—Dr. Patel told plaintiff that she looked anxious, though plaintiff was not in fact anxious.

35.     The same day, Thursday March 7, 2019, plaintiff received an email from Dr. Johnson the assistant dean telling her not to go to the Dr. Patel's clinic the next day—Friday—but to come to her office for a meeting.

4

36.     Dr. Patel spoke to plaintiff that night and told her that Dr. Patel could not be responsible for plaintiff if anything "happened to her" and that anyway she was failing the course.

37.     The next day Dr. Johnson chided plaintiff for telling Dr. Patel about her disability and then told her to return to the clinic on Monday.

38.     When plaintiff returned to the clinic on Monday—prepared to make her presentation—Dr. Patel gave her no chance to do so but falsely accused plaintiff of mistakes she had made.

39.     Plaintiff then called Dr. Bishop for advice as to what to do.

40.     On the phone with Dr. Bishop, plaintiff began crying—she had never cried before—and Dr. Bishop instructed her to go home

41.     Plaintiff then left the clinic as instructed by Dr. Bishop and went home.

42.     Dr. Bishop called her three times that day to make sure she had gone home.

43.     For ten days, plaintiff waited for word from the College about returning.

44.     On March 21, 2019, she was summoned back to the College by Dr. Bishop and Dr. Johnson for a conference.

45.     Plaintiff was told at the conference that she had received an "F" in Dr. Patel's course.

46.     She was told that she received the "F" because she had left the clinic without permission, though Dr. Bishop on the phone had insisted that she go home.

47.     She was then notified that she was on academic probation.

48.     Plaintiff was then brought in—without her consent—to meet a doctor, social worker, and a third person to discuss her medical condition.

49.     These three persons then asked her intrusive and inappropriate questions about her condition, and "hurting" herself, when she had never said such a thing.

50.     She was now told that, to make up for the "F" from Dr. Patel, she would have to take a new rotation in ambulatory care, which was different from and not a true remediation of the course she took from Dr. Patel.

51.     She went to see Dr. Gentry to protest what Dr. Patel had done

52.     Dr. Gentry told her that she had a history of hospitalization and that he did not know what was going on and he had to be cautious and the College could not be responsible if she hurt herself.

53.     Plaintiff was shocked because she had never said anything about hurting herself and the College had known she had an eating disorder when she began as a student there.

54.     She was assigned to Dr. Kerner—over her protest—because Dr. Kerner had been verbally abusive to her in the past.

55.     Dr. Kerner, who is white, was also verbally abusive to others and made disparaging racist remarks about patients in the clinic, all of whom are African American.

56.     Plaintiff at times challenged Dr. Kerner about inappropriate remarks he made about the race and gender of the patients.

57.     Dr. Kerner made disparaging remarks to her because of her diet or meal plan which was dictated by the medication she was taking. She began the rotation on June 6, 2019, and she did a presentation on a patient on July near the end of the course in which she correctly answered Dr. Kerner's questions.

58.     Nonetheless after the presentation Dr. Kerner said that he would fail her—and in effect cause her dismissal from the College—because her attitude was not "professional."

59.     In fact, plaintiff, who had done well in her course work, had been set up for failure after Dr. Patel objected to her being in the College because of her disability.

60. On July 23, 2019, plaintiff received word she had been dismissed from the College.

61. In the College of Pharmacy Student Handbook, a copy of which every student has, the College of Pharmacy has a grievance procedure for any student who is dismissed, set out in the Student Handbook, by which the student may appeal to the Dean of the College, the defendant Dr. Elmer Gentry.

62. By letter of August 9, 2019, a copy of which is attached as Exhibit 1, plaintiff filed an appeal of her dismissal.

63. Thereafter, the College did not take any action on the appeal, render any decision, or communicate with her in any way.

64. After filing the appeal, plaintiff through counsel repeatedly sought to contact the Dean, the President, and the Legal Department, but no call or message has been returned.

## Count I

## Violation of Rehabilitation Act and Americans with Disabilities Act

65. As set forth in Section 504 of the Rehabilitation Act, no otherwise qualified individual with a disability shall, solely by reason of her disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal assistance.

66. The defendant CSU does receive federal assistance and has waived any claim of sovereign immunity under the Rehabilitation Act by acceptance of such federal assistance.

67. Likewise, Title II of the Americans with Disability Act, 29 USC § 12132, which is co-extensive with the anti-discrimination provision of Section 504 of the Rehabilitation Act states that no qualified individual with a disability, shall solely by reason of disability, be excluded from participation in any program of state or local government.

68.     Plaintiff suffers from a disability as that term is defined under Section 504 of the Rehabilitation Act and Title II of the ADA, in that she has a combination of an eating disorder and depression.

69.     However, she is in no way unable to do the course work of the College of Pharmacy.

70.     As set forth above, the defendant CSU placed her on probation solely because of her disability—specifically, because Dr. Patel told her that she could not be in her clinic because of her disability and plaintiff should not even be a student in the College of Pharmacy

71.     By being placed on academic probation, solely because of Dr. Patel's hostility to plaintiff because of her disability, defendant CSU and its administrators and faculty set her up and achieved her ultimate dismissal from the College.

72.     Defendant CSU ratified the decision of Dr. Patel to exclude her from the course and Dr. Patel's judgment that she should not be a student at all and by then placing her with an abusive instructor aware of her pariah status and likely to fail her.

73.     At the time of her dismissal, due to the "F" in Dr. Patel's course, plaintiff had completed three years of the four-year program in a satisfactory manner and had incurred over $200,000 in student debt.

74.     She was qualified to participate in the academic programs of Chicago State University, including the College of Pharmacy.

75.     She was dismissed from CSU solely because of her disability, in violation of Section 504 of the Rehabilitation Act and Title II of the ADA, and, but for her disclosure of that disability to Dr. Patel, and the academic discipline that followed, she would have graduated from the College of Pharmacy and would now be working as a licensed pharmacist today.

76.     She has been treated by CSU in a malicious and vindictive manner, and denied even the formality of a decision or hearing or acknowledgement of the appeal filed and attached as Exhibit 1.

77.     Plaintiff is now paying interest on her debt of over $200,000 because she is no longer a student.

78.     Plaintiff has now lost the income she would have received as a Doctor of Pharmacy at the rate of $130,000 a year had she been allowed to graduate as anticipated in October 2019.

Wherefore plaintiff prays this Court to enter judgment against defendant CSU as follows:

A.      Reinstate her as a student in the College of Pharmacy and restrain defendant from any further violations of Section 504 of the Rehabilitation Act and Title II of the ADA, or other actions against her because of her disability, and require defendant to make any reasonable accommodation—if any—that may be necessary with respect to such disability, and refrain from further discriminatory acts in violation of federal law to prevent her graduation from the College.

B.      Order defendant to remove the "F" in Dr. Patel's course and the academic probation which she received solely because she disclosed her disability to Dr. Patel

C.      Enjoin defendant CSU from any further acts of discrimination in violation of Section 504 of the Rehabilitation Act.

D.      Grant plaintiff compensatory damages from CSU under Section 504 of the Rehabilitation, including but not limited to damages for lost income that she would have had as a pharmacist and other consequential and foreseeable damages.

E.      Grant plaintiff her legal fees and costs and such other relief as may be necessary.

**Count II**

9

## Section 1983

79.     By the aforesaid actions, and in violation of 42 USC § 1983, the defendant CSU has deprived plaintiff of her rights to equal protection and due process under the Fourteenth Amendment in that defendant willfully treated plaintiff in a disparate manner because she has a particular type of disability that stigmatizes the plaintiff and others like her in the judgment of defendant CSU and its administrators and faculty.

80.     By creating such a suspect or quasi-suspect classification, and stigmatizing plaintiff and like her with this condition, and in violation of 42 U.S.C. §1983 the defendant CSU deprived her of her right to equal protection of the laws without any substantial or justified basis treating her in this disparate manner.

81.     In further violation of 42 U.S.C. §1983, defendant CSU also denied her of right to due process before the deprivation of her contractual right as a student of CSU on the verge of graduation from a four year program, with over $200,000 in indebtedness, and denied her even the due process of the hearing procedure set out in the College of Pharmacy Student Handbook.

Wherefore plaintiff prays this Court to enter judgment against defendant CSU as follows:

 A.     Reinstate plaintiff as a student of the College of Pharmacy and remove her from academic probation because of the "F" received from Dr. Patel.

 B.     Restrain and enjoin defendant CSU from further violations of Section 1983 of Title 42 for deprivation of the rights of plaintiff under the Equal Protection Clause of the Fourteenth Amendment.

 C.     Grant plaintiff compensatory damages from defendant CSU, including but not limited to income lost as a result of her dismissal from the College of Pharmacy by defendant CSU, and all other damages allowable to her by law.

10

D.     Grant plaintiff her legal fees and costs under 42 USC § 1988 and such other relief as may be appropriate.

## Count III

### Violation of Equal Protection and Due Process and Other State Laws

81.     The individual defendants Scott and Gentry have acted in excess of their authority under the Illinois Constitution and breached the obligations of their office to plaintiff as a student enrolled in CSU by dismissing her from the College for no reason but her disability and denying her even the right of appeal for such action.

82.     The individual defendants by such acts have also unlawfully violated her rights under the due process and equal protection clauses of Article I, Section 2 of the Illinois Constitution.

83.     Defendants have unlawfully condoned the discrimination against her as a student by reason of her disability, in violation of Article I, Section 2 of the Illinois Constitution and the public policy of the State of Illinois and their duties as administrators of state-supported institutions.

Wherefore plaintiffs pray this Court to enter judgement against the individual defendants as follows:

A.     Reinstate plaintiff as a student in the College of Pharmacy and enjoin the individual defendants from further violations of her right to equal protection and due process under Article I, Section 2 of the Illinois Constitution.

B.     Remove the plaintiff from academic probation because of the "F" she received from Dr. Patel for no reason but Dr. Patel's desire to exclude her from the course solely by reason of her disability and no legitimate reason.

      C.      Grant plaintiff such other relief as may be appropriate to effect her reinstatement as a student.

Dated: March 27, 2020

                                              Respectfully submitted,

                                              /s/ *Thomas H. Geoghegan*
                                              One of Plaintiffs' Attorneys

Thomas H. Geoghegan
Michael P. Persoon
Willem W. Bloom
**Despres, Schwartz & Geoghegan, Ltd.**
77 West Washington Street, Suite 711
Chicago, Illinois 60602
admin@dsgchicago.com
(312) 372-2511